# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARRELL E. HEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Civil Action No: 08-02123 (RBW) |
| UNITED STATES DEPARTMENT | ) |
| OF STATE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The pro se plaintiff, Darrell Heard, brings this action against defendants United States

Department of State and former United States Secretary of State Condoleezza Rice, in her

official capacity, alleging various claims that stem from the defendants' administration of a

discretionary rewards program, which provides compensation for information that leads to the

capture of terrorists. Am. Compl. at 3.[1] Specifically, the plaintiff seeks compensatory and

punitive damages pursuant to the Department of State rewards program, 22 U.S.C. § 2708

(2006); the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1513 (2006);[2] the National

Security and Classification Information Protection Act, 18 U.S.C. § 798 (2006); the Intelligence

---

[1] This opinion references the page numbers of the Amended Complaint instead of its paragraphs due to the flawed numbering of the paragraphs. For example, on page 19 the paragraph numbering shifts from 55 to 22, and then on page 31, 55 is used again. To avoid confusion the numbering of the plaintiff's paragraphs will not be referenced.

[2] For his claim under the Victim and Witness Protection Act, the plaintiff appears to cite to Pub. L. 107-204, Title XI, § 1107(a), 116 Stat. 745, 810 (2002). Am. Compl. at 2, 25. The cited section is a provision of the Sarbanes-Oxley Act ("Sarbanes-Oxley"), which amended section 1513 of the Victim and Witness Protection Act.

Identities Protection Act of 1982 ("IIPA"), 50 U.S.C. §§ 421-22 (2006); the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 (2006); and the Whistleblower Protection

Act ("WPA"), Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified as amended in sections

throughout 5 U.S.C.).  Am. Compl. at 1-2.  The plaintiff also alleges numerous acts of retaliation

by the defendants, including food poisoning, torture, biological and chemical weapons

poisoning, assault on and molestation of family members, and assault and battery by

"combatants."[3]  Id. at 3-4.  Currently before this Court is the defendants' Motion to Dismiss

Plaintiff's Amended Complaint ("Defs.' Mot").[4]  For the following reasons, the Court must grant

the defendants' motion.

## I.  Background

The plaintiff claims that "[t]his case is about . . . the defendants[] willfully neglecting

White House [i]ntelligence which would have identified the rightful recipient of a reward for the

capture of the leader of Al Qaeda in Iraq in the year 2006 . . . [thus] violating [22] U.S.C. [§]

2708(c)(2) and (e)(5)."  Am. Compl. at 3.  The plaintiff appears to allege that the defendants

refused to make a reward to him "for reasons that [are] racist in nature and discriminatory . . .

---

[3] Furthermore, in his opposition memorandum, the plaintiff also invokes the Civil Rights
Act of 1871, 42 U.S.C. § 1983 (2006); the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §
1346(b) (2006); as well as asserting Bivens violations.  See Points and Authority with Proposed
Order Opposition to Defendants['] Motion to Dismiss Plaintiff's Amended Complaint ("Pl.'s
Opp'n") at 2, 8, 14, 19-22, and 27-29 (The page numbers referenced in the opinion correspond to
the plaintiff's own pagination at the top, left-hand corner of each page.  The Court notes that the
plaintiff's pagination is missing page 4.  Specifically, the plaintiff's opposition begins with pages
1 to 3, then jumps to pages 5 to 39.).

[4] Submitted in conjunction with this motion are the plaintiff's Memorandum of Points
and Authorities in Opposition to Defendants' Motion to Dismiss and the defendants' Reply to
Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defs.' Reply").

because [he is] an American black man, and disabled," and that thereafter the defendants inflicted physical harm upon him and his family.  Id. at 3-6.  He alleges that immediately after the terrorists' capture and until September 2009, "[p]ersons claiming to represent the reward[s] for Justice [Program] were filmed haranguing[] and harassing [the plaintiff] in the streets of the District of Columbia."  Id. at 7.  And beyond enduring these purported acts of retaliation himself, the plaintiff claims his granddaughter "came under assault . . . by racist elements" at her university, id. at 9, that his daughter "became a choking victim of Mr. D[.] Dancey," id., and that a grandchild "was taken into custody by Children Services," id. at 10.  He seeks multiple forms of monetary relief: (1) a $25 to $50 million dollar reward, as authorized by 22 U.S.C. § 2708(e)(5) for providing intelligence concerning a terrorist's whereabouts; (2) $200 million in punitive damages; (3) $300 million for "injury to others"; and (4) "payment of fines for Intelligence Act violations."  Am. Compl. at 3, 36-37.

On November 30, 2009, the defendants moved to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim pursuant to Rule 12(b)(6).  Defs.' Mot. at 1.  Specifically, the defendants posit that (1) the plaintiff's claims are "essentially fictitious," Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs' Mem.") at 5; (2) the Court of Federal Claims has exclusive jurisdiction over his reward claim, id. at 5-6; (3) the plaintiff has neither exhausted his administrative remedies nor has he alleged that he has ever been a federal employee, id. at 8-10; (4) the pleadings fail to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure, id. at 13; (5) the defendants have not  waived sovereign immunity, id. at 14; (6) the cited criminal statutes do not confer a private right of

action, id. at 7-8; and (7) several of the plaintiff's claims are improperly raised for the first time in his opposition memorandum, Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defs.' Reply") at 2.

## II. Standards of Review

"The distinctions between [Federal Rules of Civil Procedure] 12(b)(1) and 12(b)(6) are important . . . . Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with res judicata effect." Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).

### A. Rule 12(b)(1) Motion to Dismiss

A Rule 12(b)(1) challenge can be presented as a facial or factual challenge. "A facial challenge attacks 'the factual allegations of the complaint' that are contained on 'the face of the complaint,' while a factual challenge is addressed to the underlying facts contained in the complaint." Id. (quoting Loughlin v. United States, 230 F. Supp. 2d 26, 35-36 (D.D.C. 2002)). "A motion to dismiss under 12(b)(1) for lack of standing . . . involves an examination of the face of the complaint . . . [,]" id. (quoting Haase, 835 F.2d at 908), "whereas challenges regarding ripeness or failure to exhaust administrative remedies can be either facial or factual challenges," id. When a defendant makes a facial challenge, the district court must accept as true the allegations asserted in the complaint and consider them in the light most favorable to the non-moving party. Erby v. United States, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). With respect to a factual challenge, on the other hand, the court "'may consider materials outside of the pleadings' to determine whether it has subject matter jurisdiction" over the claims, Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7, 14 (D.D.C. 2008) (quoting Jerome Stevens Pharm., Inc. v. FDA, 402

F.3d 1249, 1253 (D.C. Cir. 2005)), and "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence," <u>Erby</u>, 424 F. Supp. 2d at 182.

B.  <u>Rule 12(b)(6) Motion to Dimiss</u>

Dismissal for failure to state a claim pursuant to Rule 12(b)(6) is warranted if the plaintiff fails to present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), the Court "must treat the complaint's factual allegations as true [and] must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged" in considering motions to dismiss under Rule 12(b)(6). <u>Trudeau v. Fed. Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (first alteration in original). In satisfying the requirement that it "state a claim to relief that is plausible on its face," <u>Twombly</u>, 550 U.S. at 570, a complaint must do more than provide "a formulaic recitation of the elements of a cause of action." <u>Id.</u> at 555. Indeed, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" when considering a Rule 12(b)(6) motion to dismiss. <u>Bostic v. U.S. Capitol Police</u>, 644 F. Supp. 2d 106, 109 (D.D.C. 2009) (quoting <u>Trudeau</u>, 456 F.3d at 193). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009).

### III.  Legal Analysis

In moving to dismiss the plaintiff's Amended Complaint, the defendants raise issues that fall into two categories: those that implicate the Court's subject matter jurisdiction and those that do not. <u>See generally</u> Defs.' Mot. at 1. Because "[j]urisdiction must be established before a

federal court may proceed to any other question," <u>Galvan v. Fed. Prison Indus., Inc.</u>, 199 F.3d 461, 463 (D.C. Cir. 1999), the Court will address first whether it has subject matter jurisdiction over the plaintiff's claims. While complaints filed by <u>pro se</u> litigants warrant less exacting scrutiny than that applied to pleadings drafted by lawyers, <u>Newby v. Obama</u>, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)); <u>see also</u> <u>Gray v. Poole</u>, 275 F.3d 1113, 1115 (D.C. Cir. 2002), "even a <u>pro se</u> plaintiff bears the burden of establishing that the Court has subject matter jurisdiction," <u>Newby</u>, 681 F. Supp. 2d at 55 (internal citation omitted).

A.    The Plaintiff's Rewards Claim

At the heart of the plaintiff's Amended Complaint is his allegation that the government denied him a reward for information that led to the capture of a terrorist. <u>See</u> Am. Compl. at 3, 6, 8, 11-17. Accordingly, he seeks relief pursuant to 22 U.S.C. §§ 2708(c)(2) and (e)(5), which established the Department of State's rewards program ("Rewards Program"). <u>Id.</u> at 1, 3. He claims that the defendants "willfully violated" the Rewards Program "by not consulting with Attorney General Mukassey [sic]," and that they "set their office against the payment of the reward for reasons that were racist in nature . . . ." <u>Id.</u> at 12. The defendants urge dismissal of this claim on the ground that the Court of Federal Claims has exclusive jurisdiction over "damages in cases not sounding in tort" that "exceed[] $10,000." Defs.' Mem. at 6 (quoting 28 U.S.C. §§ 1491(a)(1), 1346(a)(2)). The Court agrees that it lacks subject matter jurisdiction over this claim, but on other grounds.

The doctrine of sovereign immunity bars suit for money damages against the federal government and its employees in their official capacities absent a specific waiver by the federal

government.  See Dorsey v. U.S. Dep't of Labor, 41 F.3d 1551, 1552-53, 1555 (D.C. Cir. 1994);

Clark v. Library of Cong., 750 F.2d 89, 102-03 (D.C. Cir. 1984).  "[T]he existence of consent is

a prerequisite for jurisdiction," United States v. Mitchell, 463 U.S. 206, 212 (1983), and such

consent must be "unequivocally expressed," United States v. Nordic Vill., Inc., 503 U.S. 30, 33-

34 (1992).[5]  Thus, claims for damages against the government and government officials in their

official capacities "are barred by the doctrine of sovereign immunity unless either the

government specifically waives the immunity, or the government agents' actions fall within an

exception to the immunity doctrine."  Johnson v. Williams, 699 F. Supp. 2d 159, 166 (D.D.C.

2010) (citing Clark, 750 F.2d at 103-04).

Here, not only has the government declined to "specifically waive [its] immunity,"

Johnson, 699 F. Supp. 2d at 166; Defs.' Mem. At 14, but the statute relied on by the plaintiff as

the basis for his claim expressly bars judicial review of any decision made by the Secretary of

State pursuant to the Rewards Program to compensate, or not to compensate, an individual

seeking a reward.  See 22 U.S.C. § 2708(j) (stating unequivocally that "determination[s] made

by the Secretary [of State under the Rewards Program]" are not subject to judicial review).

Indeed, the administration of the Rewards Program lies within the "sole discretion" of the

Secretary of State, subject only to consultation with the Attorney General, 22 U.S.C. § 2708(b),

and again it is critical to reiterate that "[any] determination made by the Secretary . . . shall be

final and conclusive and shall not be subject to judicial review," 22 U.S.C. § 2708(j) (emphasis

---

[5]  Notwithstanding the presumption of sovereign immunity from claims for money
damages, the Supreme Court has adopted "[a] strong presumption that Congress intends judicial
review of administrative action," Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670
(1986), however, even this presumption may be overcome upon a showing of clear and
convincing evidence "of a contrary legislative intent."  Id. at 671.

added). The plaintiff's reward claim is therefore dismissed for lack of subject matter jurisdiction.

B. The Plaintiff's Claims Based on Criminal Statutes

The Court now turns to the plaintiff's claims that he seeks to pursue under the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1513 (2006), and the National Security and Classification Information Protection Act, 18 U.S.C. § 798 (2006). Am. Compl. at 25-28, 33. These are criminal statutes that sanction retaliation against witnesses, victims, and informants, 18 U.S.C. § 1513, and the disclosure of classified information, 18 U.S.C. § 798. However, criminal statutes do not confer private rights of action. Kazenercom TOO v. Turan Petroleum, Inc., 590 F. Supp. 2d 153, 160 n.9 (D.D.C. 2008) ("[I]t is well-established that . . . criminal statutes do not confer a private right of action . . . ."); Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges, 248 F. Supp. 2d 17, 23 (D.D.C 2003). Accordingly the Court lacks subject matter jurisdiction to entertain these claims.

Similarly, the plaintiff seeks monetary relief for the alleged violation of the Intelligence Identities Protection Act of 1982 (the "Intelligence Act"), 50 U.S.C. §§ 421-422. See Am. Compl. at 20-24, 34-36. The Intelligence Act is also a criminal statute that imposes fines and imprisonment for the acts of certain individuals who intentionally disclose the protected identity of covert agents. See generally 50 U.S.C. §§ 421-422. Here, the plaintiff, while offering no evidence to prove that he is or ever was a covert agent, alleges that the defendants violated this statute by disclosing his identity to others, including "citizens in the states of Ohio, California, and [the District of Columbia] and a prominent morning newscast personality in Matt Lauer, of [the National Broadcasting Company,] who exclaimed 'Darrell Heard you're rich'. . . ." Am.

Compl. at 22. However, this claim also must be dismissed for lack of subject matter jurisdiction because a criminal statute does not confer a private right of action. Kazenercom TOO, 590 F. Supp. 2d at 160 n.9; Rockefeller, 248 F. Supp. 2d at 23.

C. The Plaintiff's Employment-Related Claims

In Counts I and V of his Amended Complaint, the plaintiff alleges violations of the Whistleblower Protection Act ("WPA"), Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified as amended at sections throughout 5 U.S.C.); and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 (2006). Furthermore, he appears to seek relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16.[6] The defendants contend that the plaintiff has failed to satisfy two bedrock requirements for raising a claim pursuant to these statutes: (1) the exhaustion of his administrative remedies and (2) status "in any capacity, at any time, as a federal employee or federal contractor." Defs.' Mem. at 8-9. The Court agrees with the defendants. First, in failing to exhaust his administrative remedies the plaintiff has failed to satisfy a prerequisite to filing a lawsuit under all three statutes. See 5 U.S.C. § 1214; 42 U.S.C. §§ 12112, 2000e-16. In his nonsensical response to the defendants' exhaustion argument, the plaintiff states that his "administrative remedies existed with the State Department, the Attorney [G]eneral's office, and the Congress of the United States," Pl.'s Opp'n at 30. The Court fails to appreciate how this response addresses the exhaustion challenge. In any event, "before filing a Title VII suit [against a federal agency], a federal employee must timely pursue [his]

_____

[6] While the Amended Complaint does not specifically reference Title VII, see generally Am. Compl., since the defendants and plaintiff both responded in subsequent filings as if Title VII had been pled, see Defs.' Mem. at 9-10 and Pl.'s Opp'n at 26, and since filings by pro se litigants should be read together, Richardson v. United States, 193 F. 3d 545, 548 (D.C. Cir. 1999), and construed liberally, Newby, 681 F. Supp. 2d at 55, the Court assumes that a Title VII claim has been pled.

administrative remedies, following the requirements set forth in 29 C.F.R. § 1614." <u>Hines v. Bair</u>, 594 F. Supp. 2d 17, 22 (D.D.C. 2009); <u>see also</u> 29 C.F.R. § 1614. Thus, "[i]f a plaintiff believes [he] has been unlawfully discriminated against, [he] must consult an [Equal Employment Opportunity ("EEO")] counselor in an effort to resolve the situation informally" within 45 days of the alleged discriminatory incident. <u>Id</u>. (citing 29 C.F.R. § 1614.105(a)(1)-(2)).

Likewise, for claims brought pursuant to the WPA, "exhaustion of administrative remedies is a . . . prerequisite to suit."[7] <u>Weaver v. United States Information Agency</u>, 87 F.3d 1429, 1433 (D.C. Cir. 1996). A federal employee who alleges unlawful retaliation for whistleblowing must first bring his claim to the Office of Special Counsel ("OSC"). 5 U.S.C. § 1214; <u>Weber v. United States</u>, 209 F.3d 756, 757-58 (D.C. Cir. 2000). If the OSC finds an absence of wrongdoing, the employee can appeal that decision to the Merit Systems Protection Board, 5 U.S.C. §§ 1214(a)(3), 1221, whereupon he may then appeal to the United States Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703. "Under no circumstances does the WPA grant [a] District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." <u>Stella v. Mineta</u>, 284 F.3d 135, 142 (D.C. Cir. 2002).

Regarding the plaintiff's claim for relief under the ADA, the court also lacks jurisdiction. Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (2006), is the "exclusive remedy" for federal employees alleging disability discrimination by a federal agency, <u>Rand v.</u>

---

[7] <u>Weaver</u> discusses exhaustion of remedies under the Civil Service Reform Act ("CSRA"). 87 F.3d at 1433 (citing Pub. L. 95-454, 92 Stat. 1111 (1978) (codified as amended in sections throughout 5 U.S.C.)). Because the WPA amends the list of prohibited personnel practices under the framework of the CSRA, 5 U.S.C. § 2302, the exhaustion discussion in <u>Weaver</u> also applies to the WPA.

Geithner, 609 F. Supp. 2d 97, 100 (D.D.C. 2009), and as stated previously, the plaintiff has neither asserted nor alleged that he is or ever was employed by the federal government, or that he applied for such employment. Furthermore, "[a] person alleging a violation of Section 501 is required to exhaust administrative remedies before bringing claims to federal court." Id. Section 501 restricts judicial review to any employee or applicant for employment "aggrieved by the final disposition of [their administrative] complaint," or by the failure to take final action on their administrative complaint. Id. (alteration in original) (quoting 29 U.S.C. § 794a(a)(1)). To properly exhaust one's administrative remedies under the Rehabilitation Act, as is the case with Title VII claims, an employee must consult an EEO counselor within 45 days of the event. 29 C.F.R. § 1614.105(a)(1) (2010). "Such jurisdictional exhaustion . . . may not be excused." Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (internal quotation marks omitted). Thus, even if the plaintiff had properly raised a claim pursuant to the Rehabilitation Act, the claim would fail because he did not satisfy the mandatory administrative prerequisites before bringing this civil action.

Second, the aforementioned employment related statutes provide remedies only for employees or applicants for employment who have suffered adverse employment actions. See 5 U.S.C. § 2302; 42 U.S.C. § 12112; 42 U.S.C. § 2000e-16; 5 U.S.C. § 1101-05; 29 U.S.C. § 791. Yet the plaintiff readily concedes that "[he] is not an employee," Pl.'s Opp'n at 26, while taking the unintelligible position that "[he] need not mention employment because there is no relevancy to employment, record that connects the defendants to the plaintiff. . . ." Pl.'s Opp'n at 26, 29. The plaintiff seemingly alludes to a "reward contract" he allegedly has with the defendants, Am. Compl. at 13. To the extent the plaintiff is alleging he had a contractual relationship with the

defendant, he cannot sustain his employment discrimination claims even if he had a relationship with the defendants as an independent contractor, see, e.g., Mason v. African Dev. Found., 355 F. Supp. 2d 85, 90 (D.D.C 2004) (citation omitted) ("Title VII . . . extends protection to federal government employees, but not to independent contractors or those not directly employed by the federal government."), abrogation on other grounds recognized by Harris v. Att'y General of United States, 657 F. Supp. 2d 1, 8 (D.D.C. 2009).

Because the plaintiff has failed to exhaust the administrative remedies available to him before bringing an employment related claim against the federal government and does not allege that the basis underlying his claims arise from his status as a federal employee or an applicant for such employment, his Title VII, WPA, and ADA claims must be dismissed.

D. The Claims Asserted in the Plaintiff's Opposition Memorandum

In his opposition to the defendants' motion to dismiss, the plaintiff also invokes the Civil Rights Act of 1871, 42 U.S.C. § 1983 (2006); the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b); as well as asserting purported Bivens violations.[8] See Pl.'s Opp'n at 2-3, 8, 14, 19-22, 27-29. The defendants argue that to the extent the plaintiff raises new claims in his opposition memorandum that are absent from the Amended Complaint, "these arguments should not be given any weight," since they were improperly raised and would warrant dismissal nonetheless. Defs.' Reply at 2. However, the Court is mindful that pro se pleadings are generally entitled to liberal construction, Haines, 404 U.S. at 520, and that all filings by pro se plaintiffs should be read together in assessing whether their complaints should be dismissed.

---

[8] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 396 (1999) (complaint alleging search and seizure violations stated a federal cause of action under the Fourth Amendment).

Richardson, 193 F.3d at 548.  Accordingly, the Court cannot agree with the defendants that the claims first alleged in the plaintiff's opposition memorandum are improperly before the Court. However, the Court does agree with the defendants that the additional claims asserted outside of the Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as they fail to state any claims upon which relief may be granted.

In Richardson, the District of Columbia Circuit considered four factors in holding that a district court erred in refusing to construe a pro se plaintiff's reply to a motion to dismiss as an amendment of his original complaint: "(1) the plaintiff was a pro se litigant; (2) the plaintiff could have amended his claim as a right because the defendant had not yet filed a responsive pleading [and the plaintiff had never before sought an amendment]; (3) the plaintiff recognized the need for and attempted to make a change to his original complaint; and (4) the lack of evidence showing that the defendant would be prejudiced by a grant to amend the complaint." Carter v. Dep't of Navy, No. 05-cv-0775 (RBW), 2006 WL 2471520, at *6 (D.D.C. 2006) (paraphrasing the four factors considered in Richardson).  Although the plaintiff here, as in Richardson, is proceeding pro se (and thus a relaxed degree of scrutiny must be employed in evaluating his filings), this Court previously "require[d] the plaintiff to file an amended complaint that [would] comport[] with the pleading requirements of Rule 8(a). . . ."  See Order at 6, ECF No. 49.  In response to the Court's order, the plaintiff filed an amended complaint and the defendants in turn filed their motion to dismiss.  As a result of these events, at least one of the Richardson factors weighs against construing Mr. Heard's opposition as an amendment of his complaint, as he has already had the opportunity to amend his complaint.  Federal Rule of Civil Procedure 15(a) permits a party to amend his complaint once within twenty-one days after it was

served on a defendant, or within twenty-one days after service of a responsive pleading on the plaintiff if one is required. Here, since Mr. Heard already amended his complaint once, he has no absolute right to amend his complaint again. Washington v. Geren, 675 F. Supp. 2d 26, 36 (D.D.C. 2009) (stating that the pro se plaintiff had no absolute right to further amend his complaint); accord Washington v. Thurgood Marshall Acad., No. 03-2570 (CKK), 2006 WL 1722332, at *17-18 (D.D.C. 2006) (holding in a non pro se case that even if new claims asserted in an opposition to a summary judgment motion can be considered a request to amend, the request can be denied for several reasons).

Nevertheless, Rule 15(a) also provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Although the defendants invoke Carter to support their proposition that "[the p]laintiff cannot raise novel claims against [the d]efendants in an opposition motion, and therefore, [the allegation first asserted in the opposition] should not be given any weight . . . ," Defs.' Reply at 2 (citing Carter, 2006 WL 2471520, at *4), Carter in fact holds otherwise. There, "although the plaintiff did not include [a particular] claim in his original complaint," Carter, 2006 WL 2471520 at *6, this member of the Court nonetheless "grant[ed] the plaintiff leave to amend his complaint. . .," id. Indeed, notwithstanding the relaxed scrutiny generally employed when evaluating pro se filings, see Newby, 681 F. Supp. 2d at 55, the decision whether to permit amendments to a complaint remains fully within the discretion of the Court, Graves v. United States, 961 F. Supp. 314, 317 (D.D.C. 1997) (citing Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir 1996)). "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." Richardson, 193 F.3d at 548-49 (citing Foman v. Davis,

371 U.S. 178, 182 (1962)).

Although the Court does not believe the plaintiff has operated in bad faith, the plaintiff was previously afforded the opportunity to cure deficiencies in his original complaint when the Court ordered that he submit a more definite statement.  See Order, ECF No. 49.  Despite this accommodation, in his Amended Complaint submitted in response to that order, the plaintiff failed to raise the claims he only now advances in his opposition memorandum.  Moreover, although the plaintiff may not have acted with dilatory motive, the Court previously "view[ed] his] actions [in this case] as an abuse of the judicial process," due to his submission of multiple "motions . . . all [of] which [were] virtually premature or repetitious . . ." see Order, ECF No. 33, allowing further amendments of the complaint at this stage would, in the Court's estimation, likely cause "undue prejudice to the opposing party," and clearly produce further undue delay, see Foman, 371 U.S. at 182.  Thus, the Court is not persuaded that "justice . . . requires" that the plaintiff be granted leave to further amend his complaint.[9]  See Fed. R. Civ. P. 15(a).

However, even if justice did require that the plaintiff be permitted again to amend his complaint, the Court agrees with the defendants that "[providing] leave to amend these new claims to his complaint . . . would be futile."  Defs.' Reply at 2.  A motion to amend a complaint should be denied as futile if the complaint, even as amended, could not survive a motion to dismiss.  Graves, 961 F. Supp. at 317 (citing Glick v. Koenig, 766 F.2d 265, 268 (7th Cir. 1985) (holding that a district court is justified in denying the amendment of a pleading "if the proposed

---

[9] Regarding the application of the third Richardson factor to this case, the Court finds the record insufficiently clear to support a determination that the plaintiff "recognized the need for and attempted to make a change to his original complaint," Carter, 2006 WL 2471520 at *6 (paraphrasing the third Richardson factor), based on the content of his opposition memorandum.

amendment would not withstand a motion to dismiss")).  Accordingly, the Court will evaluate

whether each of the additional claims first asserted in the plaintiff's opposition memorandum,

see Points and Authority with Proposed Order Opposition to Defendants['] Motion to Dismiss

Plaintiff's Amended Complaint ("Pl.'s Opp'n") at 2, 8, 14, 19-22, and 27-29, can survive the

defendants' Rule 12(b)(6) motion to dismiss.

1. Section 1983 Claims

The plaintiff only cursorily references Section 1983 of the Civil Rights Act in his

opposition, stating merely: "42 U.S.C. § 1983 (1994)[] [t]o recover damages against a

government."  Pl.'s Opp'n at 3.  It is therefore impossible to understand why the statute is being

cited, and a complaint cannot survive a motion to dismiss based on a conclusory claim

unsupported by any factual allegations.  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276

(D.C. Cir. 1994).  As the Court explained to the plaintiff in an Order issued last year requiring

him to submit a more definite statement, to survive a motion to dismiss under Federal Rule of

Civil Procedure12(b)(6), the facts asserted must be plausible, not just conceivable.  See Order at

5, ECF No. 49 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Where the

complaint is "woefully deficient in its factual allegations," it is often impossible "to determine

the nature of [the plaintiff's] claim."  Brooks-Miller v. England, 357 F. Supp. 2d 197, 203

(D.D.C. 2004).  Specifically, without factual allegations of any kind, the Court cannot determine

its jurisdiction, the basis of the plaintiff's claim, or basis for the relief demanded.  That is the

situation here, and therefore, because the plaintiff's statement is devoid of the factual content

necessary to assert a claim under Section 1983, a defect which the plaintiff has failed to cure

despite being instructed to do so, the claim must be dismissed.

2.  Bivens Claims

The plaintiff also references Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), at least twice in his opposition memorandum, Pl.'s Opp'n at 3, 9, merely citing the case on the first occasion and stating in the second reference to Bivens that "[p]erhaps the best known case creating an implied cause of action for constitutional rights is Bivens." Id. at 9. However, a Bivens cause of action is unavailable to the plaintiff under the facts of this case.

In Bivens, the Supreme Court held that an individual may bring an action for damages against a "federal agent acting under color of his authority" for an alleged constitutional violation. 403 U.S. at 397 (emphasis added). However, an "extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens itself." F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994) (emphasis added) (holding that a plaintiff has no Bivens cause of action for damages against a government agency). Therefore, the plaintiff cannot maintain a Bivens claim against the Department of State.

In addition to attempting to bring a Bivens claim against the Department of State, in his Amended Complaint (which must be considered by the Court in conjunction with the opposition memorandum, see Richardson, supra part III.D) the plaintiff seeks damages for injuries allegedly caused by former Secretary Condoleezza Rice, in her official capacity, and claims that the defendants "[are] liable for the actions [of] supporters known and unknown by the defendants . . . ." Am. Compl. at 14. The Bivens doctrine permits an individual to sue a federal official for money damages only upon a clear showing of a specific constitutional violation.

Dodge v. Trs. of Nat'l Gallery of Art, 326 F. Supp. 2d 1, 12 (2004). Indeed, "as a threshold matter, the Court must evaluate whether the plaintiff has been deprived of an actual constitutional right." Id. "In other words, '[t]aken in the light most favorable to the party asserting the inquiry, . . . the facts alleged [must] show the [official]'s conduct violated a constitutional right[.]'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Furthermore, in delineating the parameters of such a right, the Court must avoid "defining the right in overly general terms," since doing otherwise would "strip the qualified immunity defense of all meaning." Freeman v. Fallin, 254 F. Supp. 2d 52, 58 (D.D.C. 2003) (citation omitted).

Here, following a thorough examination of the plaintiff's filings, the Court finds no specific constitutional violation alleged by the plaintiff that could even remotely sustain a Bivens claim against former Secretary Rice. Indeed, beyond the alleged denial of his Rewards Program claim discussed earlier, the plaintiff has offered no plausible factual basis to establish that Condoleezza Rice, in her official (or even in her personal) capacity, deprived him of any constitutional right. Accordingly, the plaintiff's Bivens claim against former Secretary Rice must also be dismissed.

### 3. The Plaintiff's Federal Tort Claims Act Claims

Finally, the plaintiff has invoked as a basis for this action the Federal Torts Claims Act ("FTCA"), see Pl.'s Opp'n at 2; however, the FTCA does not provide a means for the plaintiff to obtain the relief he is seeking in this matter. "The FTCA is a limited waiver of the United States' sovereign immunity and renders the Federal Government liable to the same extent as a private party for certain torts of its employees committed within the scope of their employment." GAF Corp. v. United States, 818 F.2d 901, 904 (D.C. Cir. 1987)). The plaintiff misapplies the

statement that "[t]he Federal Tort Claims Act waives the [g]overnment's immunity from suit in sweeping language."  Pl.'s Opp'n at 2 (quoting United States v. Yellow Cab Co., 340 U.S. 543, 547 (1951)).  Thus, he fails to acknowledge that the federal government "may define the terms upon which it may be sued[,] and absent full compliance with the [these] conditions . . . courts lack jurisdiction to entertain tort claims against it."  GAF Corp., 818 F.2d at 904 (footnotes omitted).

Importantly, the FTCA exempts claims based on the performance, or failure to perform, a "discretionary function or duty on the part of a federal agency or an employee of the Government," even if the agency or employee abuses its discretion.  28 U.S.C. § 2680.  This exemption under the FTCA "articulates a policy of preventing tort actions from becoming a vehicle for judicial interference with decision-making that is properly exercised by other government branches."  Industria Panificadora, S.A. v. United States, 763 F. Supp. 1154, 1156 (D.D.C. 1991).  In Industria Panificadora, S.A., the foreign plaintiffs sought to recover damages under the FTCA when their property was destroyed by Panamanian civilians, on the grounds that the United States failed to provide adequate police power to maintain public order during its operation to remove General Manuel Noriega from power.  Id. at 1155.  There, a former judge of this Court held that the case "involve[d] Executive Branch judgments that are grounded in political, military, and foreign policy considerations," and therefore was subject to the discretionary function exemption.  Id. at 1158.  Here, likewise, the defendants (both the Department of State and its Secretary) exercise discretion in the administration of the Rewards Program.  To the extent any injuries resulted from the alleged decision not to compensate the plaintiff, the defendants cannot be held liable for that discretionary decision.

Lastly, the plaintiff again fails to assert that he has exhausted the necessary administrative remedies required by the FTCA, "which is a mandatory prerequisite," Epps v. U.S. Att'y Gen., 575 F. Supp. 2d 232, 238 (D.D.C. 2008) (citing GAF Corp., 818 F.2d at 904-05). Moreover, the FTCA does not waive the United States sovereign immunity as to constitutional torts, which it seems the plaintiff is alleging here. See id. (citing Meyer, 510 U.S. at 477-78 (listing the categories of claims for which the United States has waived sovereign immunity under the FTCA and holding that the FTCA "does not provide a cause of action for [the plaintiff's constitutional tort claim]")); see also Roum v. Bush, 461 F. Supp. 2d 40, 45 (D.D.C. 2006). Importantly, actions brought under the FTCA must be brought against the United States; a government agency may not be sued in its own name. Childress v. Northrop Corp., 618 F. Supp. 44, 48 (D.D.C. 1985) ("[A] federal agency is not a proper defendant in a suit brought pursuant to the FTCA. Instead, such actions should be filed against the United States itself.").

Accordingly, to the extent that the plaintiff has attempted to assert a claim for relief pursuant to FTCA, the claim is dismissed.

E.  The Plaintiff's Remaining Claims

Beyond claiming his own right to a reward, the plaintiff also asserts that he represents another person whom if not for "neglect[ed] White House intelligence . . . would have [been] identified [as] the rightful recipient" of a reward, and he seeks at least $300 million in damages for "injury to others."[9] Am. Compl. at 3, 37; Pl.'s Opp'n at 5. In addition, the plaintiff alleges

_____

[9] It is not entirely clear based on the amended complaint whether the allegation of "injury to others" implies that the additional party or parties are also entitled to a reward under section 2708. The Court assumes, however, that the complaint is asserting that the additional party or parties are also entitled to a reward.

that his granddaughter "came under assault . . . by racist elements" at her university, Am. Compl. at 9, that his daughter "became a choking victim . . .," id., and that a grandchild "was taken into custody by Children Services," id. at 10. However, a pro se non-attorney generally cannot represent the interests of other individuals, 28 U.S.C. § 1654; Stoddard v. D.C. Pub. Defender Servs., 535 F. Supp. 2d 116, 117 n.1 (D.D.C. 2008), and "[t]he federal courts have consistently rejected attempts at third-party lay representation." United States ex rel. Rockefeller v. Westinghouse Elec. Co., 274 F. Supp. 2d 10, 17 (D.D.C. 2003) (alteration in original) (quoting Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982)). There is no reason to do otherwise here.

Without offering any credible evidence to link any of the injuries to the actions of the defendants, the plaintiff also claims "poisonings at the hand of racist restaurant workers, torture in public, public humiliation, poisoning from [biological and] chemical weapons attacks, . . . physical assault and battery by combatants . . . ." Am. Compl. at 3-4. On the whole, these allegations (and in fact all of the plaintiff's allegations) fall within the scope of what can be characterized as nothing other than "fantastic or delusional" and therefore warrant dismissal. See Neitzke v. Williams, 490 U.S. 319, 328 (1989); Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994); Roum, 461 F. Supp. 2d at 46. The plaintiff in Roum similarly sought $875 million in damages in a complaint alleging "an intricate plot by various agencies and officials of the federal government to kidnap, torture, and kill [him]." Roum, 461 F. Supp. 2d at 42. There, a judge of this Court held that in addition to the plaintiff's inability to establish a valid waiver of sovereign immunity or make a valid claim under the FTCA, the case also warranted dismissal because the claims were "fundamentally incredible" and "[u]nder Rule 12(b)(1), federal courts lack

jurisdiction over claims that are 'so attenuated and unsubstantial as to be absolutely devoid of merit,'" id. at 46 (quoting Hagans v. Lavine, 415 U.S. 528, 536 (1974)).

Here, on the same grounds that warranted dismissal of the claims in Roum, the Court cannot exercise jurisdiction over the plaintiff's conspiratorial claims. The plaintiff's allegations of retaliation by the Department of State through various forms of intimidation and violence, following the defendants' purported refusal to offer him a reward for supposed information concerning the whereabouts of a terrorist, ultimately amount to no more than "fanciful" and "bizarre conspiracy theories" and must be dismissed. See id. Therefore, these claims are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## IV. Conclusion

Based on the foregoing reasons, the Court **GRANTS** the defendants' motion to dismiss the plaintiff's Amended Complaint.[10]


REGGIE B. WALTON
United States District Judge

---

[10] An Order is being issued contemporaneously with this Memorandum Opinion.